## Branch *against* Doane.

Where the defence to an action for the obstruction of a water-course, by the erection of a dam below the plaintiff's works, and thereby setting the water back upon them, was, a right in the defendant, acquired by prescription, to raise the water, in the manner and to the height complained of; and it appeared, that the defendant at first erected a temporary wooden dam, by which the water was raised to that height; but he afterwards, for his convenience in erecting a permanent stone dam, discharged the water, for some time, through a waste-way, in consequence of which the water was so lowered as not to flow up to the plaintiff's works; and then, when the permanent dam was completed, the water was raised again, by means thereof, to the height complained of, and was so continued; it was held, that the period of user, by

*Windham,*
July, 1846.

Branch
*v.*
Doane.

virtue of which the prescriptive right claimed by the defendant could be acquired, did not commence until the water was permanently raised, by the stone dam, after its completion.

In *April*, 1798, *A* conveyed to *B* a parcel of land bordering on a water-course, with liberty to *B* to use the water to operate his mill, or any other use he might see cause to put it to, at any time when it run over the grantor's dam above. *B* occupied the premises so conveyed, and used the water to operate his mills from that time until *July*, 1843. In an action then brought by *B* against *C*, the owner of a mill privilege below, for raising the water, by means of a permanent dam, and thereby setting it back upon *B's* works, it was held, 1. that whether *B's* right to use the water was, under his deed from *A*, a qualified right, or not, *C*, having no right or license to do the acts complained of, had thereby violated the right of *B*, for which *B* was entitled to a recovery; 2. that for this purpose, it was not necessary for *B* to prove any specific actual damage resulting therefrom.

In actions of this description, actual possession alone, is, as against a mere wrong-doer, a sufficient title to support a recovery.

THIS was an action for the obstruction of a water-course, thereby causing the water to set back upon the plaintiff's mills; commenced *July* 6th, 1843.

The cause was tried at *Brooklyn, October* term 1845, before *Church,* J.

The plaintiff, to establish his title to the carding-mill and saw-mill described in the declaration, offered in evidence a deed from *Thomas Branch* to himself, dated *April* 17th, 1798, conveying a certain piece of land, with a saw-mill standing thereon, bounded, on one side, by the *Pachaug* river, "with liberty to use the water, at any time, when the water runs over the dam above the grist-mill, [owned by the grantor,] for the use of said saw-mill, or any other use said *Jonathan Branch* [the present plaintiff] shall see cause to put it to." This deed was accompanied with evidence that the plaintiff had used and occupied the premises up to the time of the commencement of this suit, and that such mills had been operated by the water of said stream. The plaintiff offered no evidence of any injury, nor did he make claim for any damage, on account of back-water thrown upon the wheel of his carding-mill, but claimed to recover for injuries sustained by back-water thrown upon the apron and shafts of his saw-mill only.

It was admitted, that the defendant was the owner and in possession of the land and privilege on the *Pachaug* river, next below the plaintiff's privilege; that the defendant became a joint owner of his land and privilege, in 1828, and the sole

owner, in 1838 ; that in 1828, there was, and for many years had been, a wooden dam standing across the river, called the " *Cook* dam," which was then in a dilapidated state ; but it was neither proved nor claimed, that the defendant had any title as riparian proprietor on the river, above the mills and privilege of the plaintiff.

The defendant claimed to have proved, that in *June,* 1828, he, with his then co-owner of the premises, intending to erect a cotton cloth manufactory upon their privilege, commenced the erection of a stone dam, a little above the old " *Cook* dam," for the purpose of operating such manufactory ; and that, for the sole purpose of enabling them to erect such stone dam, they constructed a temporary coffer dam, composed of planks and timbers, which, as they claimed, extended across the river above the place where they contemplated erecting, and did erect, such stone dam, so as temporarily to turn the water from the bed of the stream below, and which extended from the *East* side of the river, in a down-stream direction, to the *West* bank.   The defendant further claimed to have proved, that after such temporary dam was erected, they commenced the erection of the *Eastern* portion of the stone dam ; and that the work was prosecuted until a portion of such dam was completed, extending from the *Eastern* bank partially across the river ; that then the *Eastern* part of the temporary dam was removed, and the *Western* part so changed, as to turn the water from the *West* bank of the river back to its natural channel towards the *East* bank, in order that they might complete the *Westerly* portion of the stone dam below ; and that the stone dam was completed in the month of *October,* 1828, when the temporary dam was entirely removed.   The defendant also claimed to have proved, that the temporary dam, as first erected, which turned the water over the *West* bank of the river, was finished by the 15th of *June,* 1828 ; and that it raised the water to a greater height than it was afterwards raised, by the stone dam, when completed ; that the temporary dam was so altered, after the *Eastern* part of the stone dam was completed, as to turn the water from the *West* bank of the river, and cause it to flow over that part of the stone dam which was then completed, and to raise and set back the water as high as before ; and that such al-

teration in the temporary dam was made prior to *July* 4th, 1828.

The plaintiff denied, that the temporary dam raised the water as high as it was raised by the stone dam. He also denied, that after the alteration of the temporary dam, the water flowed over the stone dam, or that portion of it then completed; but he claimed, that it was discharged through an aperture or waste-way in the stone dam, so as not to raise the water as high, or set it back as far, as the stone dam did, after it was erected; nor so far as to set the water back upon the plaintiff's premises.

The defendant claimed and prayed the court to charge the jury, that if the facts as to the temporary dam and the stone dam were as claimed by him, he had acquired a prescriptive right to maintain the stone dam, and to flow the water back as far as he had ever since done; and that, though the jury might find, that while the *Western* part of the stone dam was being built, he had, the better to enable him to finish the stone dam, and merely for his temporary convenience, discharged the water through such aperture or waste-way, or otherwise, so that during that time, the water was not raised as high as it was by the stone dam, or so that the water, during that time, did not flow back upon the plaintiff's premises; yet as the defendant, at all times after the stone dam was finished, by means thereof, caused the water to flow back as aforesaid, the jury would from these facts be authorized to find, that the defendant had a prescriptive right, or a presumptive grant from the plaintiff, to keep up the stone dam and flow back the water, acquired before the commencement of this action.

The court did not so instruct the jury, but charged them, that if the temporary dam was kept up at first, and the stone dam afterwards, so as to cause one obstruction to the water, for fifteen years before the commencement of this suit, the defendant had acquired the right which he claimed; but though, before the stone dam was finished, the water flowed up to the plaintiff's works, by reason of the temporary dam; yet if afterwards, it was drawn down, by reason of said aperture or waste-way, or otherwise, and kept down until the stone dam was finished, so as not to raise the water as high as it was raised by the stone dam, and so as not to flow up to the plaintiff's works, as the plaintiff claimed, it could not be con-

sidered that the defendant's prescriptive right commenced until the stone dam was finished.

The plaintiff offered no other evidence of title than that before stated; nor did he offer any evidence as to the state of the water in the dam mentioned in his deed from *Thomas Branch*, at any time.

The defendant claimed and requested the court to charge the jury, that the plaintiff had no right to use the water in the river to run his saw-mill, except when the water was running over the dam above his mill; and that as the plaintiff had offered no evidence that the water was runing over said dam, during any portion of the time in which he claimed that his mill had been obstructed by back-water from the defendant's dam, the plaintiff could not recover in this action.

The court did not so charge the jury, but charged them, that if from the evidence they should find, that the dam of the defendant had thrown the water back upon the wheels of the plaintiff's saw-mill, as he claimed, the plaintiff was entitled to recover, unless the defendant had proved a right or a license so to do.

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial for a misdirection.

*Strong* and *Foster*, in support of the motion, contended, 1. That where a party, having asserted a right, exercises it in the same manner that he would do, if he had a grant thereof, this is evidence of such a grant; and if continued for fifteen years, he thereby acquires a right by prescription. For this purpose, he is not obliged to keep in the exercise of his right to the fullest extent, all the time. If a dam is swept away, or a breach made in it, and the party, in a reasonable and convenient time, rebuilds or repairs it; is the time during which the water was thus lowered to be deducted from the time of enjoyment? A prescriptive right to the use of water is to be acquired in the same manner, as a right of way, or a right to lights, or a right of fishery. In these cases, it is not necessary to continue in the actual enjoyment every hour or every day, in order to acquire the right.

2. That in this case, the defendant, when he first raised the water to the height complained of, asserted thereby a claim of right; and all that he did afterwards, was in pursuance of this

*Windham,*
July, 1846.
———
Branch
*v.*
Doane.

claim, and in furtherance of the same object. His opening a waste-way, which had the effect, for a short time, of lowering the water, was only for his convenience in prosecuting his works for keeping up the water permanently. It was no abandonment or suspension of his claim. On the contrary, he did just as he would have done, if he had then in his pocket a deed conveying the right claimed, and was exercising that right in the most advantageous manner. There has been no act of interruption by the plaintiff, since the defendant first flowed the water back. The case shows, that the time from the first raising of the water to the height complained of until the commencement of the suit, was more than fifteen years, *viz.* from *June* 1828 to *July* 1843.

3. That the plaintiff offered no evidence of title sufficient to enable him to maintain this action. His only proof of title was a deed from *Thomas Branch* in 1798, which gave only a *qualified* right to the use of the water—a *contingent* interest. *Non constat* that the acts complained of interfered with this right—that the motion of the plaintiff's wheel was ever obstructed, when he had a right to move it. If it be said, that a possessory title alone is sufficient, the obvious answer is, that the plaintiff here does not rest on possession, but on a documentary title, which shows a *qualified* right, and he must recover, if at all, on such qualified right : he cannnot show a *different* right. The case stands on different ground from what it would, if the plaintiff had relied on possession alone, and the presumption growing out of such possession.

4. That this case is distinguishable from that of *Branch* v. *Doane*, 17 *Conn. R.* 402.

*Welch* and *Backus*, contra, insisted, 1. That the continuity of the defendant's enjoyment was a matter of fact, which was distinctly submitted to the jury ; and their finding, which was against him, is conclusive on the point. But if it were an open question here, it appears from the motion, that the defendant first raised the water, in *June* 1828, by a mere *temporary* structure, which continued about a fortnight ; and that there was then a second temporary dam, which did not flow back the water upon the plaintiff's premises, so that while this state of things continued, which was from the 4th of *July* to *October*, the plaintiff's rights were not invaded. Now, in the

first place, it may well be doubted, whether the erection of a structure avowedly temporary, is any assertion of a permanent right.   But secondly, if the temporary dam evinced an intention to keep up the water, then the subsequent lowering of the water, which continued for a greater length of time, evinced an intention *not* to keep it up.   At any rate, whatever the intention may have been, the fact is, that it was not kept up—there was not an *uninterrupted* invasion of the plaintiff's right.   The decision in *Branch* v. *Doane*, 17 *Conn. R.* 402. is on this point precisely *ad idem.*

*Windham,*<br>July, 1846.<br><br>Branch<br>*v.*<br>Doane.

2. That in regard to the plaintiff's title, it is sufficient, as against the defendant, who claims no title whatever, that the plaintiff is, and for forty five years has been, in quiet possession.   If the plaintiff's use has been larger than his grant, that is nothing to the defendant : it does not injure him, or justify his wrongful acts.   *Thomas Branch's* dam may have long since gone down ; or the plaintiff may have acquired a prescriptive right to use all the water.   Be this as it may, possession alone is a sufficient title, as against a mere wrong-doer.   Between the plaintiff's grantor and the defendant there is no privity or connexion.   2 *Leigh's N. P.* 1438.   *Chambers* v. *Donaldson,* 11 *East* 66.   The plaintiff's having shown an original documentary title, does not preclude him from relying upon his possessory right.

3. That it was not necessary for the plaintiff to show, that he had sustained any actual damage, by the wrongful acts of the defendant.   *Parker* v. *Griswold,* 17 *Conn. R.* 288.

STORRS, J.  We consider the question which has been first argued before us, as to the correctness of the charge of the court below, on the claim of the defendant of a prescriptive right to keep the water of the stream raised to the height complained of, by the plaintiff, as being settled in the case of *Branch* v. *Doane*, which was decided by this court, at its last term in this county.   17 *Conn. R.* 402.   So far as it respects that question, we are unable to perceive, that the present case differs from that, in any essential, or scarcely even in any unimportant circumstance ; or that the charge of the court below, in the present case, on this point, is not precisely conformable to the decision in that.   With that decision we are entirely satisfied, for the reasons there given.

The remaining question respects the correctness of the other part of the charge to the jury, in which they were instructed, that if from the evidence they should find that the dam of the defendant had thrown the water back upon the wheels of the plaintiff's saw-mill, as he claimed, the plaintiff was entitled to recover, unless the defendant had proved a right or license so to do. The defendant, on the ground that the plaintiff had no right to use the water for the purpose of working his saw-mill, except when the water was running over the dam above his mill, and that he had offered no evidence that the water was running over said dam, during any portion of the time when he claimed that his mill had been obstructed, by the back-water from the defendant's dam, claimed, that the jury should be instructed, that the plaintiff could not recover in this action. This claim of the defendant affirmed, what he now endeavours to maintain, that the plaintiff was not entitled to recover, without showing that the defendant had violated the particular right which the plaintiff acquired to the use of the water, by the deed to himself, which he introduced in evidence, from *Thomas Branch;* that that deed limited the right of the plaintiff to use the water to times when it run over the dam of said *Thomas;* and that it was necessary for the plaintiff, in order to recover, to prove, not only a violation of that right, but that he suffered some actual sensible, specific damage, by such violation. The proposition involved in the charge as given, is, that the facts conceded in the case showed such a right on the part of the plaintiff to the use of the water, as against the defendant, that the setting back of the water, by the latter, upon the plaintiff's saw-mill, constituted a violation of that right, in the absence of a right or license shown by the defendant to do so ; (neither of which was found by the jury ;) and that it was sufficient for the plaintiff, in order to entitle himself to a recovery, to show such violation, without proving that he sustained any specific, actual damage therefrom. The facts thus conceded were, that the plaintiff, in 1798, received from *Thomas Branch* the above-mentioned conveyance of the premises of the plaintiff; and that from the time of its execution to the commencement of this suit, a period of more than forty-five years, the plaintiff had used and occupied said premises, and operated his mills, by the water of said stream.

We do not consider it necessary to determine the construction of the deed from *Thomas Branch*, because, conceding, for the present purpose, that the right to the use of the water acquired by the plaintiff under it, was such a qualified one only as the defendant claims, and also that the plaintiff in this case is limited to a recovery for the violation of that particular right, we are, in the first place, of opinion, that the setting back of the water, by the defendant, permanently, by means of a dam, in the manner claimed by the plaintiff, constituted a violation of that right, inasmuch as it was the exercise and assertion of a claim adverse to and inconsistent with the plaintiff's right, which, if continued for the period of fifteen years, would ripen into and confer on the defendant a prescriptive right to set back the water, and thus destroy the right of the plaintiff. The right of the plaintiff, according to the construction given to his deed by the defendant, was a permanent one to the use of the water where it was, in a certain state, in which, by the laws of nature, it must frequently be, rather than an accidental right, as it has been termed by the defendant's counsel. It is therefore certain, that a dam, which should permanently set back the water upon the plaintiff's mill, would prevent the enjoyment of that right by him. And there was nothing in the manner in which the acts of the defendant were done, which, in any degree, qualified the claim of which they were evidence, or to show that they were done in subservience to, or with a recognition of, the right of the plaintiff. It clearly was not necessary that the plaintiff should be in the actual exercise of his right, and the application of it to any specific purpose, during the period of time when the water was set back, by the defendant, in order to prevent the acquisition of an adverse right by the defendant; and it will scarcely be claimed, that such adverse right would not be acquired, by a continuous use of fifteen years, merely because, during a few days, within that period, the water did not flow over the dam above the plaintiff's works. The effect of the acts of the defendant upon the rights of the plaintiff, depends on the character of those acts and the claim with which they were accompanied, and not upon the fact whether, when those acts were done, the plaintiff was in the actual exercise of his right, by applying it to any beneficial purpose; although the circumstance that the plaintiff, when the injury

*Windham,*
July, 1846.

Branch
*v.*
Doane.

was committed, was not thus in the actual exercise of it, is proper to be taken into consideration in estimating his damages, respecting which there is no question before us. The acts of the defendant being therefore a violation of the rights of the plaintiff, was a legal injury to him, for which he may recover, without showing that he thereby suffered any specific or particular damage. This principle was fully settled, in the recent case of *Parker* v. *Griswold*, 17 *Conn. R.* 288. which is applicable here, and sanctions the charge of the court below, so far as it respects this point.

We think, however, in the second place, that the plaintiff was not restricted to a right of recovery merely for a violation of the right conferred by the deed from *Thomas Branch*, but that he was at liberty to avail himself of any other title to recover, which he may have established by his evidence. He was not thus restricted, by the declaration, nor by the mere adduction of that deed, as a part of his evidence of title : and although he might, on the trial, have placed his claim to recover on such a specific and narrow ground, as to have been precluded from availing himself of one more extensive, it does not appear that he claimed to recover, either exclusively, or at all, on the ground of the right acquired by the deed, or that he did not claim to recover on the ground of his possession, or by virtue of an unqualified right to the use of the water acquired by prescription. The evidence introduced by him is consistent with either of these claims ; and if it proved a title broader than that conferred by the deed, we know of no principle which precluded him from claiming a recovery upon it. This being the case, we are further of opinion, that the possessory interest of the plaintiff shown on the trial, constituted a sufficient title, as against the defendant, to justify the verdict. It was conceded, that, during the time of the commission of the acts complained of, and for the period of about forty years next previous thereto, the plaintiff had been in the occupation of the premises, and in the peaceable enjoyment of the water of the stream, for the purpose of working his mills. Whether the plaintiff, when those acts were committed by the defendant, was interfering with the rights of *Thomas Branch*, by using the water, when it did not run over his dam, is an enquiry, which, we think, it is not competent for the defendant here to make. He claims no right, in this case, under *Thomas*

*Branch*, and is, therefore, as to the plaintiff, a mere wrong-doer. And no principle is better settled, than that as against a wrong-doer, actual possession, in an action of this description, is a sufficient title for the plaintiff. *Saund. Pl. & Ev.* 81. 689. *Leigh's N. P.* 584. *Twiss* v. *Baldwin*, 9 *Conn. R.* 291. 302. *Anon. Cro. Car.* 499. *Graham* v. *Peat*, 1 *East* 244. 1 *Chitt. Pl.* 379. (9th *Am.* ed.)

Justice and policy both strongly require, that a bare tort-feasor, who has invaded the quiet possession of another, should not be allowed to shield himself under the title of a third person, between whom and himself there is no privity nor connexion. It was therefore settled in *Chambers* v. *Donaldson*, 11 *East's R.* 66. that in an action of trespass *quare clausum fregit*, the defendant cannot justify under the title of one to whom he is a stranger ; and therefore, that if the defendant in such suit pleads soil and freehold in another, by whose command he justifies the trespass, such command may be traversed by the plaintiff ; thus exploding the doctrine which had been supposed previously to prevail on that point, and carrying out, in its fullest extent, the principle established in *Graham* v. *Peat*, 1 *East's R.* 244. that a bare possession in that action is sufficient to maintain trespass against a wrong-doer. Lord *Ellenborough* says : " Unless the command be traversable, it will be sufficient for a mere wrong-doer, who has invaded the quiet possession of the plaintiff, to plead title in another, and an authority from him ; although that other himself did not question the plaintiff's possession. Nay, the argument might be pushed further, and it might be contended, that the same defence could be set up against a plaintiff, who had been in possession for twenty years ; and this monstrous consequence would ensue, that the wrong-doer would protect himself under a title which the party himself could not assert in any possessory action." But since it has been settled, as in *Graham* v. *Peat*, 1 *East* 246. and *Harker* v. *Birkbeck*, 3 *Burr.* 1563. that trespass may be maintained, by a person in possession against a wrong-doer, we are called upon to " strip the wrong-doer of his shield." The same principle was adopted, in *First Parish in Shrewsbury* v. *Smith*, 14 *Pick.* 297. where *Shaw*, Ch. J., in giving the opinion of the court, says : " If a lawful owner, in whom the legal title remains, upon considerations of propriety, equity and conscience,

chooses to acquiesce, and permit the party in possession to retain that possession, notwithstanding any defect of title, by what rule of law, of equity or sound policy, can a mere stranger be allowed to interfere, and by his own act, violate the actual and peaceable possession of another, and thereby compel him to disclose a title, in the validity or invalidity of which such stranger has no interest ?"   These reasons, thus forcibly expressed, most fully apply to the present case.

The superior court should not be advised to grant a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.