JAMES JACKSON and PATRICK MAGENNIS *vs.* JOSEPH C. TODD, DANIEL MACKEY, AND PHILIP RAFFERTY.

1. A guardian has no right to sell or make a deed for the property of his ward, without an order of the Orphans Court or the chancellor; and a deed made by virtue of such an order cannot be given in evidence without producing the authority to make it.

2. In an action of trespass, if the plaintiff's possession is coupled with an interest in the estate, he will be entitled to recover, as well for injury to the estate as to the possession; but if he seek to recover only as possessor of the property, his recovery will be limited to damages for injury to the possession.

3. Where a deed purporting to convey title is relied upon to prove possession, if the deed is defective the plaintiff cannot recover either for injury to the estate or the possession; but if he show a legal title to part of the property, he can recover in proportion to his interest.

4. As owners of the reversion, infants are entitled to an action for injury of a permanent nature amounting to waste.

This case came before the court upon a writ of error to the Circuit Court of the county of Passaic.

The bill of exceptions presented several questions, which were argued by the counsel; but as no opinion was given upon most of them, it is not necessary to state them. The facts necessary to a proper understanding of the points decided are stated in the opinions delivered.

The case was argued before Justices OGDEN, ELMER, and HAINES, by *Woodruff* and *Zabriskie*, for the plaintiffs in

error, and by *Hopper* and *A. Pennington*, for defendants.

ELMER, J. A great many exceptions were taken in the progress of the cause, and are contained in the several bills of exceptions, many of which are clearly frivolous, and serve only to complicate and obscure the case. I shall not undertake to go through them, but shall content myself with noticing one subject, embraced in several exceptions, which must, in my opinion, decide the cause, and which, therefore, renders it unnecessary to notice the others.

The action was in trespass, for breaking and entering a certain mill of plaintiffs, and breaking down and removing from it certain shafting and gearing, fastened and attached to the floor, walls, and ceilings. The declaration contained several counts, to which there was a plea of not guilty, and pleas of freehold in the defendants, and of property in the shafting and gearing, upon which issues were taken. After proving that the mill and other property belonged to one Daniel Holsman, who died seized of it, leaving Catharine Holsman, his widow; Daniel Holsman, Maria Holsman, Eliza B. Holsman, and Julia Holsman, infants under the age of twenty-one, and Catharine Ann, who intermarried with Clement B. Barclay, and Margaretta, who intermarried with James Barclay, his children and heirs, plaintiffs offered in evidence a deed for said property, purporting to be made by said Catharine Holsman, as widow and as guardian of the infant heirs, by virtue of an order of the chancellor, and by the two Barclays and their wives, to the plaintiffs, bearing date November 1, 1850, before the acts complained of were committed. It appeared that Mrs. Holsman was the guardian of the said infants, appointed by the Orphans Court, but no order of the chancellor recited in the deed, or other authority to sell the interest of the infants, was

produced. To the reception of this deed, defendants' counsel objected, on the ground that no authority from the chancellor to sell was shown. But the deed was admitted, and a bill of exceptions sealed. It does not appear by this bill whether it was received as a valid conveyance of the infants' right to the property or not, and had nothing appeared to show that it was relied on as sufficient evidence of the title, and as evidence of the possession of the whole interest in the property, inasmuch as it was clearly admissible as a valid conveyance of those who were of age, there would, perhaps, have been no error.

· But it further appears that the judge charged the jury, "that if the plaintiffs had no interest there beyond a naked possession, the amount of their recovery should be graduated by one scale, if their possession was coupled with an interest in the estate, real and personal, or either, it should be graduated by another scale. The present plaintiffs claim to have been there in possession through Mr. Barclay, and that they were the owners of the soil and mill and property, and also of the shafting and gearing. A deed and bill of sale or confirmation have been offered in evidence to show the rights of the plaintiffs. The two seem to carry out what Mr. Barclay and Mr. Pennington have testified was the contract of sale. The possession of the property alleged to be conveyed by these papers has passed from the representatives of the estate to the plaintiffs. Neither the grantors, nor any party claiming under them, have impugned that title, and it is sufficient for this case to say, that a stranger to the transaction, without estate in or claim of property, cannot step forward, either as a friend of the orphan children, or as a protector of the rights of the administratrix, or as a champion for creditors, and by objection, without assailing proof, lawfully impeach that sale, or the *prima facie* evidence to be drawn from the instruments of writing which tend to establish it."

This part of the charge was excepted to, and the judge was requested, on the part of the defendants to charge that, as to the real estate, there is no evidence of the title to four sixths thereof, being the portions of the children who were minors at the time of the execution of the deed to plaintiffs, having been transferred to the plaintiffs, the plaintiffs' deed for the same being inoperative and void as to such four fifths part thereof " ; but the judge refused so to charge, and his refusal was excepted to.

It thus appears, as well by what the judge did charge as by what he refused to charge, that the deed was received and submitted to the jury as evidence of title in the plaintiffs to the whole of the property purporting to be therein conveyed. In this there was, in my opinion, error. The guardian had no right to sell or make a deed for the property of her wards without an order of the Orphans Court or the chancellor ; and a deed made by virtue of such an order cannot legally be given in evidence without producing the authority. A guardian is entitled to the possession of his ward's land, and may transfer that possession or lease the land without any order, but he can convey no title to the freehold, otherwise than as the statutes authorize. The deed received purported to be made by virtue of an order of the chancellor, which is authorized by the act of 1845 (*Rev. Stat.* 550). The sale is required, by that act, to be reported to and approved by the chancellor before a conveyance shall be executed ; so that the special authority to sell is just as necessary to be shown as in the case of a sale by an executor or a sheriff. A deed made by one having no title by virtue of a naked power, is inoperative and void, unless made in pursuance of the power, and the power must be shown. *Den* v. *Lambert*, 1 *Green* 182 ; *Den* v. *Despreaux*, 7 *Halst.* 182 ; *Den* v. *Philhower and Sowers, Court of Errors, June T.* 1854.

The effort, on the part of the plaintiffs' counsel, was to get rid of this difficulty, by insisting that, as possession

was shown to have been delivered by authority of the guardian to the plaintiffs, and as possession without a title would have been sufficient to enable them to maintain trespass against wrongdoers, the admission of the deed was not an error so affecting the merits of the case as to justify a reversal for that reason. But the question of possession was in controversy, and the deed was submitted to the jury as evidence on that point; and not only so, but they were correctly told, that if plaintiffs' possession was coupled with an interest in the estate, real and personal, or in either, their recovery would be graduated accordingly. If the title to four sixths of the property remained in the infants, the plaintiffs, as mere possessors, were not entitled to damages to the full value of the property injured. As owners of the reversion, the infants were entitled to an action for the injury done to the property of a permanent nature amounting to waste, from which no act of the guardian precluded them. 2 *Saund.* 252 *n.* 7; *Potts* v. *Clarke, Spenc.* 536. There was, therefore, material error in the ruling of the court, for which the judgment must be reversed.

HAINES, J., concurred.


OGDEN, J., delivered a dissenting opinion.

The action below was in trespass, for breaking and entering the close of the plaintiffs, and taking away and converting certain machinery and gearing.

The declaration contains four counts.

In the first, the defendants are charged with forcibly and unlawfully entering the close of the plaintiffs, called the home mill lot, in Paterson, and interrupting the plaintiffs in the transaction of their lawful business.

In the second, they are charged with an unlawful entry into the mill and building of the plaintiffs, called the home mill, and with separating from the walls, in two of the stories thereof, shafting and other property belonging to

the plaintiffs, and carrying away and converting the same to their own use.

In the third, they are charged with unlawfully carrying away from the said two stories of the mill goods and chattels belonging to the plaintiffs, and converting them to their own use.

In the last, they are charged with an unlawful entry into the mill on the said home lot, and with breaking down and forcing from the walls, in two rooms thereof, shafting, gearing, and their appurtenances, belonging to the plaintiffs, then being affixed and attached to the walls, floors, posts, and ceilings of the rooms (specifying the articles in detail), and conveying away and disposing of the same to their own use.

The cause was tried upon three issues of fact, formed by the pleadings.

*First.* On the general issue.

*Second.* The issue upon a plea of *liberum tenementum.*

*Third.* An issue on a plea that the articles charged to have been unlawfully taken away by the defendants were at the time the property of the defendants, and that of right they took them.

No evidence was offered by the defendants upon the second issue, and the jury, having found the other two issues in favor of the plaintiffs, assessed the damages at $2600.

During the trial, which spread over six days, many exceptions were taken by the plaintiffs in error to the rulings of the court, and likewise to the charge of the judge, and to his refusing to give in charge to the jury some points propounded by them.

In disposing of the errors which have been assigned, I shall reverse the order adopted by counsel on the argument, and shall consider, in the first place, the exceptions that were taken to the admission in evidence of a deed made to the plaintiffs below, and to the charge given to

the jury as to the effect of that deed, and the refusal of the judge to instruct them that it was inoperative and void as to four sixths of the premises claimed by the plaintiffs, and that there was no evidence before them of title to such four sixths ; because, if the views of the counsel for the plaintiffs in error are correct upon the branch of the argument, the judgment must be reversed, and a *venire de novo* be ordered.

The premises whereon the trespass is alleged to have been committed had belonged to Daniel Holsman. He died intestate, leaving a widow and six children, four of whom were minors at the time the grievances complained of were committed.

The proofs established that, on the 16th of September, 1850, Mr. Barclay, the son in law of Mrs. Holsman, in behalf of her, of himself, and of others interested in the estate, made a contract for a sale to Todd, Mackey, and Rafferty of the premises called the home mill, for the price of $18,000, and that he received on such behalf the sum of $2000 on account ; and that the interest on the balance of the purchase money was to commence on the first day of November then ensuing, and the purchasers to be entitled to the rents and use of the property from November ; that at the time of the negotiations for the sale and purchase, the premises were in the occupancy of the plaintiffs in error, as tenants of the representatives of Daniel Holsman, deceased ; that before the contract was completed they were informed that a sale was contemplated, to which they replied, that there would be no difficulty about the possession ; and that when told that the sale to the plaintiffs below had been concluded, they said there would be no difficulty about the possession ; also, that it had been mutually arranged that they should hold the premises until the first of November.

It likewise was shown that Mr. Barclay, on the first day of November, called at the office of the defendants be

low, in Paterson, received the rent then payable, and informed their clerk that their term in the premises was at an end.

The deed which was objected to bears date the first of November, 1850, was acknowledged on the twenty-second of the same month, and was delivered at or about that time. It was recorded on the 6th of December.

On the 25th of November, Mr. Barclay went to the premises in company with the plaintiffs below, and gave to them, as their owners, full and actual possession of the different parts thereof.

On the 30th of November, the defendants below, with a large company of men and several teams, went upon the premises, and with strong arm took down from the building the gearing and shafting provided therein for working the mill, carried it away, and disposed of it as they saw fit. Those acts constituted the trespass complained of in this suit.

As the plaintiffs below had been put into actual possession of all the premises, as the purchasers thereof, by Mr. Barclay, representing in himself one share of the estate, and acting as agent for his mother in law in her own right and as guardian of the minor children of Daniel Holsman, deceased, and also as agent of James Barclay and his wife, it was not essential for the support of the action that they should produce evidence of a legal title.

Proof of naked possession is sufficient to support a recovery against a *tort feasor*. This court are to infer, from the verdict of guilty, that the jury were satisfied that the plaintiffs below were lawfully in possession of the premises, and that the tenancy of the defendants had been properly terminated before the alleged trespass was committed by them. If the deed was erroneously admitted in evidence, or an undue importance was given to it in the charge of the judge, the injury therefrom to the defendants below could only have been in the assessment of damages.

In an action of *disseisin* the plaintiffs' possession, alone and without deed, is evidence enough, unless more is made requisite by proof on the defendant's part. 7 *Conn.* 298; C. J. Hosmer.

Again, 17 *Wend.* 257, "possession is *prima facie* evidence of freehold."

15 *Wend.* 171, " a prior possession is sufficient to entitle a party to recover in an action against a mere intruder or wrongdoer."

*Crabb on Real Estate*, § 2486, found in 55 *Law Library*, " to maintain trespass, it is essential that the plaintiff have exclusive possession at the time of the injury committed; yet, as against a stranger or wrongdoer, it is immaterial whether such possession be founded on a good title or not."

4 *B. & C.* 574, " a mere occupancy is sufficient for this purpose."

If the plaintiffs below, upon their possession derived through parties whom the defendants· admit had been the owners of the premises, were entitled, through the evidence, to a verdict against the defendants, their effort to prove actual title was unnecessary: hence by the rule, that the illegal admission of cumulative or immaterial evidence will not vitiate a verdict supported by other sufficient proof, the error on this point was not well assigned, even if the deed was unlawfully introduced before the jury. 1 *Zab.* 1.

But should the deed have been altogether rejected?

Letters of guardianship over the persons and estates of the minor children, duly granted to Mrs. Holsman, had been produced and received in evidence.

The deed was executed by Mrs. Holsman, the doweress, by C. C. Barclay and his wife, who is a daughter of the intestate, and by James Barclay and his wife, also a daughter of the intestate. All these were of full age; and hence the instrument, when proved, was competent

evidence of the transfer of their rights in the premises to the plaintiffs below, and was properly admitted before the jury. The deed, however, was also claimed by the plaintiffs to be sufficient *prima facie* proof of a conveyance to them of the estates of the minor children in the premises. It purported, on its face, to have been executed by Mrs. Holsman, in a relative capacity also, to wit, as guardian of the minor children of Daniel Holsman, deceased. It seems to have been prepared with much care, and the recitals therein set forth at large, that regular proceedings had been taken before the chancellor of this state, under a law approved March 19th, 1845, entitled, "An act relating to the sale and disposition of the real estate of infants.' The recitals are full as to all the proceedings, including a confirmation thereof by the chancellor, preliminary to and necessary for a legal transfer of the title of the infants.

The execution of the instrument by Mrs. Holsman, in her capacity of guardian, was sufficiently proved, and nothing appeared upon the face of the deed showing it to be irregular or void.

It was contended, in behalf of the defendants below, that the instrument furnished no evidence whatever of a valid conveyance of the estates of the minors, because it was not accompanied with the proper proofs of the proceedings before the chancellor, upon which it rested. The deed was given to the jury without qualification or limit as to its effect.

The judge charged the jury, that in an action of trespass, if a plaintiff had no interest in the premises beyond a naked possession, the amount of his recovery should be graduated by one scale, but if his possession was coupled with an interest in the estate, real and personal, or in either, it should be graduated by another scale ; and further, that the plaintiffs in this case claimed to have been in possession through Mr. Barclay, and that they were the

owners of the mill and property, and also of the shafting, &c., which had been taken down by the defendants, and removed, or, in other words, that they were in possession under claim of title ; and he told them that a stranger, without estate in or claim of property, cannot by objection, without assailing proofs, lawfully impeach the *prima facie* evidence to be drawn from the instruments of writing which tended to establish the title.

The jury were also instructed by the court, that those conveyances, accompanied by the testimony of Mr. Barclay and of Mr. Pennington, as to the contract for a sale, and followed by the actual possesion given on the 25th of November, were sufficient proofs to support a recovery of damages for the invasion of the freehold, and any injury done to it, and for the removal and conversion of the shafting and articles which were forcibly taken from the premises on the 30th of November, unless the defendants, upon the issue of *liberum tenementum*, had shown a better title to the same ; and also, that their verdict would conclude the matter of damages for taking away the machinery, &c., as no other parties could maintain an action against the defendants for the alleged trespass.

These instructions of the judge were excepted to, and errors have been assigned upon the exceptions. He thereupon was requested to charge the jury, that there was no evidence that the title to four sixths of the real estate (the portions of the infants) had been transferred to the plaintiffs, the deed for the same being inoperative and void as to such four sixths parts. The judge refused to make such charge, and sealed a bill of exceptions thereon.

The charge and the refusal to charge relate to matters so connected that they may appropriately be considered together.

It is proper to bear in mind, as we progress, that the defendants below offered no proof of title upon the issue of *liberum tenementum.*

In the first place, as the possession of the entire estate had been passed over to the plaintiffs below by the guardian of the infants and by her agent, can she maintain an action against the defendants below for any of the acts complained of in the declaration in this suit? or can those minors, when at majority, maintain such an action? They cannot support trespass because it is a possessory action, the possession of the premises being in the plaintiffs alone, given and held under at least an alleged contract for the purchase thereof.

Although the heirs may have the freehold in law, being out of possession they shall not have trespass. 6 *Com. Dig.* 390 *B.* 3; 2 *Rolle* 553.

If the guardian shall be disposed to complain of waste or of injury to the estate of her wards, she must look for remuneration to those in whose absolute possession she placed it.

I cannot detect any error in that portion of the charge.

Again. Were the defendants below entitled to the instructions which the judge declined giving? or, in other words, had they a right upon the evidence as it stood before the jury, to impeach the title or right; upon which the actual and sole possession of the plaintiffs rested?

The verdict guilty establishes that the defendants below were fraudulent wrongdoers, trespassers without excuse; yet, as such, they here complain, that the judge refused to direct the jury to mitigate their punishment, because the plaintiffs had not shown a technical and complete paper title for the premises invaded lawfully put in their possession by the former owners thereof, and intruded upon by the defendants without pretence of authority or color of justification.

In 18 *Conn.* 243, *Branch* v. *Doane*, Storrs, J., in giving the opinion of the court, remarks, "Justice and policy both strongly require that a mere *tort feasor*, who has invaded the quiet possession of another, should not be

allowed to shield himself under the title of a third person, between whom and himself there is no privity or connection."

Again. "Can a mere stranger be allowed to interpose, and by his own act violate the actual and peaceable possession of another, and thereby compel him to disclose a title, in the validity or invalidity of which such stranger has no interest?"

4. *Johns.* 202, *Jackson* v. *Harder*—"A mere trespasser or intruder cannot protect himself by setting up an outstanding title in a stranger."

*Ohio Cond. Rep.* 551, *Lessee of Hoyt* v. *Hemphill*—"A mere intruder cannot question the validity of a patent under which the plaintiff claims."

4 *Verm. Rep.* 488, *Phelps* v. *Parks*—"Where the plaintiff claims by virtue of the levy of an execution, and the defendant is a stranger to the title, and does not claim under the execution debtor, he will not be permitted to call in question the correctness of the judgment, and execution by virtue of which the plaintiff claims title."

19 *Conn.* 154, *Curtis* v. *Hoyt*—"This was an action of trespass for the destruction of a building which had belonged to an engine company. The plaintiff had full possession of the building at the time of the trespass, claiming to be the owner thereof, through a purchase from the members of the association. His bill of sale, or deed, was not signed by all the members, and the defendants sought to diminish the damages by that defect of title."

The case was brought before the Supreme Court for review. In examining it, Ellsworth, J., says, "We now come to a question of a different character. It is said the court should have charged the jury, that if the deed was not signed by each person who was at the time, or had been, a member of the company, the plaintiff could not recover the whole damages against a wrongdoer. But

why not? Who could sue for an injury to the possession but the sole and exclusive possessor?"

In citing this case, I am not unmindful that it was a contest respecting personal property.

26 *Maine Rep.* 545, *Dolloff* v. *Hardy.*—This was an action of trespass *quare clausum fregit,* for unlawfully entering upon lands, and cutting and carrying away trees. The plaintiff claimed title to the *locus in quo* through the proprietors of common lands. He offered no deed in evidence, but relied upon certain votes and proceedings of the proprietors, to whom the township was granted by Massachusetts, in 1774.

The defendants set up no title, but they objected to the plaintiff's title: first, on account of an alleged illegality in the proceedings under which the plaintiff claimed; secondly, they contended that if the proceedings were legal, they were insufficient to pass title to lands.

Tenney, J., in delivering the opinion of the court, after going over the points presented, adds, " But the defendant does not stand in such a relation to the proprietors or to the plaintiff as to authorize the technical objections on which he relies. The plaintiff is bound only to show that the land was in his possesion, either actual or constructive, at the time of the alleged trespass, and this rightfully against the defendant. The defendant is a stranger to the transactions between the plaintiff and the proprietors; has no rights to be affected whether they stand or fall; no claim to the land or to the trees cut by him has he presented. His acts are equally a trespass whether the land or its possession passed from the proprietors to the plaintiff or not; and in an action like this the wrongdoer cannot set up a title in a third person without showing some authority or right derived from the owner to justify his acts."

1 *Zab. Rep.* 1, *Schenck* v. *Cuttrell.*—This was an action in trespass on the case, brought against the owner of a

steamer, for negligently destroying by fire certain build-ings.

The plaintiff showed possession of the entire premises and title in himself to seven eighths of the estate. He also showed, by parol, that he had agreed for the purchase of the remaining eighth, had paid a part of the consideration, and had gone into possession of that share under the agree-ment; but it appeared that the deed for the undivided eighth part was not made until after the accident. The evidence was objected to. The court, in deciding the case in error, say, "It was contended, upon the argument, that the evidence of the parol agreement to purchase, and pos-session under it, was not competent to prove the seizing of the plaintiff. It was incumbent upon him to prove not only that he had an interest in the premises, but such an interest as entitled him to damages; and as he claimed damages to the full amount of the property destroyed, it was necessary for him to establish a legal right to recover that amount. Although the evidence offered did not prove a strictly legal estate in the plaintiff in the one eight part of the premises, yet, for the purposes of this action, and as against the defendants below as wrongdoers, it was com-petent."

Again. "The party who had the strictly legal estate could not maintain an action himself or join the plaintiff in an action for the injury, as he was out of possession under the agreement." "The loss was entirely the plaintiff's, and no recovery could be had for the one eighth of the value of the buildings burned, except by him."

The plaintiffs below in the case before us were not bound in support of their action, as against wrongdoers, to prove any title beyond the presumption arising from their possession. They saw fit, however, to go further, and to show that their possession was under a valid agreement to purchase, partly executed by a payment of a portion of the consideration money, and also to show that it

was continued under color of a legal title.    They produced in evidence a deed, valid on its face, executed by proper parties, purporting to act in the premises under authority of law.    Such testimony was sufficient, in my judgment, for the purposes for which it was employed.    The plaintiffs below, as the case appears before us, would have been compelled to bear any loss which might happen from accident between their entry into possession under the agreement for purchase and a valid deed, and they should be entitled to any benefit which might accrue in the interval.    But suppose that they had gone a step further, and had attempted to show the proceedings in the Court of Chancery, and a material variance had appeared between the exemplification of those proceedings and the recitals in their deed, should the defendants, without pretence of possession of title, or privity with the persons from whom the legal title was to be derived, have reaped an advantage from the variance, and on that account have been mulcted in less damages for their wilful trespasses ?    If not, the production of the evidence of those proceedings with the deed, would have been to no purpose.

From a careful review of the cause, I am of opinion that the exceptions urged by the defendants below, which have been examined, were not well taken, and that the judge of the Circuit Court did not err in his charge, nor in his refusal to charge, as required to do.

The numerous other errors assigned have been examined by me, but none of them present sufficient grounds for reversing the judgment.

In my opinion, the judgment below should be affirmed, with costs.

SAME *case.*—*2 Dutch.* 525.